[Cite as *Caetano v. Mangus*, 2014-Ohio-3219.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PEDRO AFONSO CAETANO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-107 |
| | : | |
| AMY (CAETANO) MANGUS | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of
                             Common Pleas, Domestic Relations
                             Division, Case No. 2006 DR 00510



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      July 18, 2014



APPEARANCES:

For Plaintiff-Appellant:              For Defendant-Appellee:

PEDRO AFONSO CAETANO, Pro Se          CINDY RIPKO
Rua Dom Nuno Alvares Pereira          35 S. Park Place, #201
No. 9, 4 Esq.                         Newark, OH 43055
2675 Odivelas, Portugal

*Delaney, J.*

{¶1}   Plaintiff-Appellant Pedro Afonso Caetano appeals the October 31, 2013 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Plaintiff-Appellant Pedro Afonso Caetano and Defendant-Appellee Amy (Caetano) Mangus were married on September 22, 2004 in Lebanon, Ohio. One child was born as issue of the marriage on May 2, 2005.

{¶3}   Caetano and Mangus were divorced on September 21, 2007. Mangus was named the residential parent. At the time of the divorce, Caetano was employed by Proctor and Gamble as a regulatory affairs manager and later as a teaching hospitals specialist. The child support worksheet stated Caetano's gross annual income was $87,000.00. Magnus's gross annual income was $33,602.00. The decree ordered Caetano to pay child support for $691.87 per month, plus a 2% processing fee. The child support order constituted a deviation from the guideline amount in the amount of $300.00 per month or $3,600.00 annually. The basis for the deviation was the travel-related expenses that Caetano was expected to incur in exercising his court-ordered parenting time with the minor child.

{¶4}   Caetano left his employment with Proctor and Gamble to work as a regulatory affairs manager with Genzyme, a corporation located in Massachusetts. He also worked as an intern clinical pharmacist with Brigham and Women's Hospital in Boston. On or about September 7, 2010, Caetano relocated to his home country of Portugal. Caetano is currently employed by the Nova Medical School as a professor of

pharmacology. The position is considered public sector employment. In 2011, Caetano had a gross annual income of approximately $66,362.00 in U.S. dollars. Caetano's 2012 earnings statements showed his gross earnings were $47,414.12 in U.S. dollars and his gross annual income was $46,494.69 for the 2012 tax year.

{¶5} Caetano has multiple degrees. Caetano earned a bachelor of science in pharmaceutical sciences from Universidade de Lisboa in 1995; a Ph.D. in pharmacology in 2000 from the University of Michigan; an AA in communications in 2004 from the University of Cincinnati; a master of public health in health care management/pharmaceutical policy/pharmacoepidemiology from Harvard University School of Public Health in 2007; a doctor of pharmacy from The Ohio State University in 2010; and a certificate in pharmacoepidemiology from the London School of Hygiene and Tropical Medicine of the University of London in 2011.

{¶6} On September 11, 2012, Mangus filed a post-decree motion requesting the trial court modify the existing child support order and terminate the deviation and modify the existing award of the income tax exemption. Mangus argued there had been more than a 10% change from the existing child support order resulting in a change of circumstances. On December 11, 2012, Caetano filed a post-decree motion to decrease the child support amount and to increase the deviation. The trial court set the matter for an oral hearing and permitted Caetano to appear at the hearing by telephone.

{¶7} The hearing was held on December 18, 2012. At the hearing, Mangus testified to her income and the care she was providing for the child. Mangus is remarried and has a child with her husband. Mangus is paying for her family's health insurance. She stated that Caetano visited his child once during 2011 and at the time of

the hearing, once during 2012. Mangus provided evidence that roundtrip airfare from Lisbon, Portugal to Columbus, Ohio was $900.59.

{¶8} Caetano testified at the hearing that he left his employment with Genzyme because Genzyme was going to be sold and he believed he was going to lose his employment. Caetano, as a professor with Nova Medical School, is a civil servant. Caetano testified and presented evidence that Portugal had a very low minimum wage in relation to Western Europe and the debt crisis that began in Greece caused Portugal to suffer from a similar financial crisis. Portugal enacted austerity measures that resulted in the reduction of the salaries of civil servants. Because of the reduction in salary, the expense of travel, and his child support obligation, Caetano testified he could not afford to visit his child in the United States. Caetano testified he was in a relationship with a woman and they were expecting a child.

{¶9} On March 18, 2013, the magistrate issued his decision. The magistrate found the evidence in relation to the statutory factors demonstrated that Caetano was voluntarily underemployed. Therefore, the trial court imputed income to Caetano in the amount of $87,000.00, which was the income Caetano earned at the time of the divorce. The magistrate recalculated Caetano's child support obligation pursuant to the child support worksheet and determined Caetano's monthly obligation was $664.70, plus a 2% processing fee, when private health insurance coverage is in effect and $665.57 per month, plus a 2% processing fee, together with cash medical support of $107.42 per month, plus a 2% processing fee, when private health insurance coverage is not in effect for the child. The magistrate further found that a deviation in the annual amount of $2,000.00 or the monthly amount of $166.67 was warranted based on the

evidence presented concerning travel related expenses for an annual trip to visit with the parties' child.

{¶10} Because the newly ordered child support amount, with the deviation, was less than a 10% difference from the current child support amount, the magistrate determined there was no change in circumstances pursuant to R.C. 3119.79.

{¶11} Caetano filed objections to the magistrate's decision. The trial court overruled the objections and issued its final entry adopting the magistrate's decision on October 31, 2013.

{¶12} It is from this decision Caetano now appeals.

**ASSIGNMENTS OF ERROR**

{¶13} Caetano's brief somewhat conforms to the appellate rules. The court will recite what it understands to be Caetano's Assignments of Error:

{¶14} "I. A FACTUAL CRUCIAL ERROR IS ASSIGNED TO JUDGE RICHARD P. WRIGHT, WHICH STATES ON HIS OPINION DATED OCT. 1, 2013 ABOUT PEDRO CAETANO 'THAT PLAINTIFF VOLUNTARILY RELOCATED TO HIS NATIVE COUNTRY OF PORTUGAL, LEAVING HIS EMPLOYMENT (IN US) WHERE HE HAD EARNED $66,000.00 FOR THE YEAR 2011.' THIS IS FALSE. THIS ERROR ALONE (AND THERE ARE MANY OTHERS) UNDERMINES THE ENTIRE COURT'S DECISION TO CONSIDER PLAINTIFF VOLUNTARILY UNDEREMPLOYED.

{¶15} "II. THE MALICIOUS FACTUAL ERROR OF NOT CONSIDERING THAT PLAINTIFF IS PORTUGUESE IS ASSIGNED TO MAGISTRATE.

{¶16} "III. THE ERROR OF FAILING TO APPLY OHIO LEGAL RULES AND LAWS IS ASSIGNED TO MAGISTRATE.

{¶17} "IV. THE SURREAL ERROR OF ATTRIBUTING TO PLAINTIFF/APPELLANT THE POWER [TO] PREDICT THE FUTURE AND FINANCIAL FATE OF NATIONS ONE YEAR AHEAD IS ASSIGNED TO MAGISTRATE."

**ANALYSIS**

I., III., and IV.

{¶18} We will consider Caetano's first, third, and fourth Assignments of Error together as they argue the trial court erred in its decision to find that Caetano was voluntarily underemployed and to impute income. We disagree.

{¶19} A trial court has discretion in the calculation of child support and the appellate court will not disturb a child support order absent a showing of an abuse of discretion. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). In order to calculate child support, the trial court must determine the parent's income. The imputation of income is a matter "to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral,* 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), paragraph one of the syllabus. A determination with respect to these matters will only be reversed upon a showing of abuse of discretion. *Id.* In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 317, 219, 450 N.E.2d 1140 (1983).

{¶20} In *Farrell v. Farrell,* 5th Dist. Licking No. 2008–CA–0080, 2009–Ohio–1341, ¶ 20, we stated: "In deciding if an individual is voluntarily under employed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to obligor's income-producing abilities and his

or her duty to provide for the continuing needs of the child. *Woloch v. Foster* (1994), 98 Ohio App.3d 86, 649 N.E.2d 918. A trial court does so by weighing the circumstances of each particular case. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218."

{¶21} R.C. 3119.01(C)(5) defines "income," for purposes of calculating child support, as follows:

"Income" means either of the following:

(a) For a parent who is employed to full capacity, the gross income of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

{¶22} In turn, R.C. 3119.01(C)(11) defines "potential income" as follows:

"Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:

(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) Any other relevant factor.

(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.

{¶23} The basis for Caetano's post-decree motion requesting a reduction in the amount of child support was the decrease in Caetano's income. Caetano argued the financial crisis in Portugal caused him, as a civil servant, to suffer a reduction in his income. The trial court found Caetano voluntarily left his employment in the United States and relocated to Portugal. According to the documents Caetano provided to the trial court to support his argument that the financial crisis caused the reduction in his

income, the trial court referred to the dates in the articles, stating that Caetano knowingly entered the job market in Portugal at a time of financial unrest. Caetano relocated to Portugal in September 2010. In 2008, Portugal had a low average monthly wage compared to other western European countries. In spring of 2010, an article provided by Caetano stated that Portugal was "battered by the debt crisis that began in Greece," causing it to enact three austerity measures. The trial court found that with Caetano's high degree of education, sophistication, and intelligence, it was "hard-pressed" to believe that Caetano was unaware of Portugal's financial situation when he accepted a position as a public sector employee.

{¶24} Caetano is highly educated. Caetano has demonstrated his capability to earn a higher income. He has chosen to work as a public sector employee in Portugal and, as far as the evidence demonstrates, he has continued to work as a public employee even under the dire fiscal status of the government. There is no evidence that Portugal requires Caetano to be employed in the public sector. We cannot find the trial court abused its discretion in determining that by choosing to be employed in Portugal as a civil servant, Caetano was voluntarily underemployed based on his prior income-producing capabilities and his duty to provide for the continuing needs for his child who resides in the United States.

{¶25} Caetano next argues it was error for the trial court to impute income under the factors of R.C. 3119.01(C)(11). Considering Caetano's prior employment experiences, his high level of education, and his special training and experience, we do not find the trial court abused its discretion in imputing income to Caetano in the amount of $87,000.00. Caetano argues the trial court did not consider the factors of the

availability of employment in the geographic area where he resides nor did the trial court consider the prevailing wage and salary levels in the geographic area. A review of the record shows the evidence of the prevailing wage of a public sector employee was presented in part to the trial court, but Caetano has also been employed in the private sector. Evidence was presented of Caetano's salary as a private sector employee in the United States, where resided for at least 10 years. There was no evidence presented as to the availability of private sector employment in Portugal for Caetano. There was no evidence presented as to the prevailing wages of the private sector in Portugal or that the private sector employee was experiencing wage reductions at the same level of the public sector employee.

{¶26} Based on the evidence presented, we find no abuse of discretion for the trial court to find Caetano was voluntarily underemployed and to impute income to Caetano.

{¶27} Caetano's first, third, and fourth Assignments of Error are overruled.

II.

{¶28} Caetano argues in his second Assignment of Error that the trial court did not give full import to the fact that Caetano was a Portuguese citizen and no longer a resident of the United States.

{¶29} A review of the record and judgment entries show the trial court took into account Caetano's circumstances as a public sector employee in Portugal when it considered a modification of the child support order issued under the authority of the statutes and legal precedents of the State of Ohio.

{¶30} Caetano's second Assignment of Error is overruled.

## CONCLUSION

{¶31} The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Farmer, J., concur.